UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| ELLEN R. BROWN, | ) | |
| | ) | |
| PLAINTIFF | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 1:13cv34RLM |
| | ) | |
| CAROLYN COLVIN, ACTING | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| DEFENDANT | ) | |

OPINION AND ORDER

In August 2010, Ellen Brown lost her job as an injection mould operator and sometimes fork lift operator when her employer decided she couldn't do her job under restrictions her doctor had ordered. Ms. Brown applied for disability insurance and Supplemental Security Income benefits, and lost.[1] This is what Ms. Brown said while testifying at the hearing on her petition:

- She experiences sharp shooting pain traveling across her lower back into the inside of her right leg.

- Her pain is constant even with medication that has been prescribed to her.

---

[1] Ms. Brown seeks Disability Insurance and Supplemental Security Income benefits under Title II, 42 U.S.C. § 401, et seq. and Title XVI, 42 U.S.C. § 1381, et seq. respectively of the Social Security Act. She filed her applications on August 11, 2010, asserting an onset date of May 8, 2010 due to a number of issues including back problems and depression. Her application was denied initially, on reconsideration, and after an administrative hearing in September 2011, at which she was represented by counsel. The ALJ found that Ms. Brown had some severe physical impairments but could still perform certain jobs available in the national and regional economy, so she wasn't disabled within the meaning of the Act. See 20 C.F.R. § 416.920(g). The Appeals Council denied review of the ALJ's decision, making the ALJ's decision the final determination of the Commissioner.

- She can't work, mostly due to the pain.

- The pain curtails her general activities, too:

  - It's hard for her to travel in a car because getting in and out of the car is painful.

  - She has to lean on the cart when she goes to the store.

  - She spreads her chores out throughout the week because she can't do housework for very long.

  - She has to sit while her food cooks and can't stand long enough to prepare the food properly.

- She can't sit for as long as an hour at a time.

- She lies down most of the day.

- If she tries to lift anything heavier than a gallon of milk, pain shoots down her spine.

- She naps several times a day because of the fatigue from her pain.

- Depression and anxiety keep her from gainful employment, too:

  - She cries "at the drop of a hat sometimes".

  - She dislikes being around others because of her nervousness.

An ALJ must consider a claimant's testimony about her own condition if medical evidence supports her testimony. Indoranto v. Barnhart, 374 F.3d 470, 474 (7th Cir. 2004). There is medical evidence to support Ms. Brown's testimony about her pain and her depression.

- In April 2010, Ms. Brown complained to her doctor of pain all over her lower back, radiating into her legs.

- In May 2010, her doctor noted that she had sciatic pain and still suffered right leg pain that affected her sleep.

- An ensuing MRI showed:

    - mild degenerative disc disease L5-S1 with a central disc protrusion that touched, but didn't displace, the anterior thecal sac;

    - grade I retrolisthesis L4 on L5 with mild degenerative disc disease, with an increased disc bulge greater on the right side, and moderate right (and very mild left) neuroforaminal narrowing;

    - degenerative spurrin L2-L4 without disc space height loss representing spondylosis; and

    - a bone marrow signal remarkable for discogenic end-plate changes surrounding the L5-S1 intervertebral disc.

- Ms. Brown began treatment with the Centers for Pain Relief, where her doctor noted chronic lower back pain radiating into her leg, with numbness and tingling in her foot, and that Ms. Brown could get relief from pain only by not moving and prescription medications; bending, lying flat, and lifting just made it worse.

3

- The doctor ordered a caudal epidural steroid injection in June 2010, in the left L4-L5 facet joint and near the nerve roots on the L4-L5 and L5-S1 spaces.

- Ms. Brown reported continued chronic pain in her August visit to the Centers for Pain Relief, and was diagnosed with Lumbar Facit Athropathy, Sacroilitis, left L5 Radiculopathy, and Thoracic Myofascial Pain Syndrome.

- Dr. Revathi Bingi conducted a consultative psychological evaluation in August 2010, and said Ms. Brown's depression and anxiety appeared to be decreasing her quality of life, so she gave her a global assessment of functioning score of 49, which connotes serious symptoms — such as suicidal ideation, severe obsessional rituals, frequent shoplifting — or serious impairment in social, occupational, or school functioning (*see* <u>Bates v. Colvin</u>, 736 F.3d 1093, 1099 n.3 (7th Cir. 2013)).

- Physical findings were about the same during Ms. Brown's September visit to the Centers for Pain Relief, but she reported that the pain medication had started to lose its effect, so the doctors increased the prescribed dosage; she also presented with muscle weakness.

- Ms. Brown returned in November, with about the same findings.

- In December, she reported that the medications were helping, but her lower right back pain radiating down her leg still hit 10 on a 10-point scale at times; she said her pain was sharp and constant.

- In February 2011, Ms. Brown reported that the pain on her left side was worse, but wasn't radiating into her left leg.

- In March, the doctors at the Centers for Pain Relief noted the same symptoms.

The record contained considerable evidence indicating that Ms. Brown wasn't disabled, most notably her own testimony about her day-to-day activities: she cooked food in a microwave oven or slow cooker, did the dishes, kept her bird's cage clean, went to a pub with her boyfriend about once a week, watched NASCAR on occasion, shopped for herself and her grandmother at Wal-Mart (and took her mother to Wal-Mart once a week), cared for her own personal hygiene, completed household chores like laundry with the benefit of breaks, drove, managed her own finances, and engaged in regular social interactions with her family. Medical records made reference to her normal gait; only Dr. Bingi's records (which resulted from a single examination) referred to difficulty being around others.

So the ALJ had considerable challenges of weighing evidence on his plate. Noting that most of what Dr. Bingi described of her examination seemed inconsistent with the GAF rating of 49, the ALJ gave Dr. Bingi's "opinion little weight as the opinion is inconsistent with the doctor's own observation, which

accordingly rendered it less persuasive." As to the restrictions imposed on physical activity by the doctor at to the Centers for Pain Relief, the ALJ gave the opinion "limited weight as it does not fully align with the medical record as a whole and is inconsistent with the overall evidence." The ALJ gave little weight to another doctor's restrictions on physical activity because they weren't consistent with the activities Ms. Brown had described. The ALJ gave some weight to a state doctor's restrictions, but noted that Ms. Brown was "more impaired than determined by the State doctor." Another state doctor had conducted a psychiatric review and placed considerable weight on the reports of Ms. Brown's physical activities and her ex-employer's failure to mention significant difficulties in dealing with other people; that doctor found that Ms. Brown's mental condition wasn't severely limiting, and the ALJ gave that opinion "significant weight as it is consistent with the medical record as a whole."

> Finally, as to Ms. Brown's testimony, the ALJ said this:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, **the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.**

The court of appeals has been critical of this language because it is a tautology: the ALJ finds the claimant's testimony incredible except to the extent the ALJ finds it credible and supportive of the ALJ's conclusion. Bjornson v. Astrue, 671 F.3d 640, 645 (7th Cir. 2012); Parker v. Astrue, 597 F.3d 920, 922

(7th Cir. 2010). The court of appeals has recognized that the ALJs have far more work than can be handled without some shortcuts, and so affirms rulings that contain that language if the court can tell why the ALJ ruled as he or she did. Pepper v. Colvin, 712 F.3d 351, 367-368 (7th Cir. 2013); *see also* Shideler v. Astrue, 688 F.3d 306, 312 (7th Cir, 2012). But with or without that boilerplate language, the ALJ "must provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010); *accord* Beardsley v. Colvin, — F.3d —, No. 13-3609, 2014 WL 3361073, at *2 (7th Cir. July 10, 2014); Craft v. Astrue, 539 F.3d 668, 677 (7th Cir. 2008). That bridge is missing from the ALJ's findings and conclusions.

The bulk of the evidence to which the ALJ pointed when limiting the weight of medical opinion came from Ms. Brown. The ALJ pointed to Ms. Brown's daily activities — evidence that came primarily from Ms. Brown, though her mother provided some as well — when rejecting the opinions of two doctors concerning postural limitations — whether Ms. Brown could bend or twist, and how long she could sit or stand. The ALJ gave significant weight to the state doctor's psychiatric opinion because the ALJ saw it as consistent with the evidence of Ms. Brown's daily activities — the lion's share of which came from Ms. Brown's testimony — and the ex-employer's failure to note difficulties with others during the 13 years before the claimed onset date of Ms. Brown's alleged emotional disability.

The ALJ's opinion is quite thorough in most respects, but one searches in vain for the logical bridge by which the ALJ concluded that Ms. Brown's testimony was credible — almost dispositively so — when she described her daily activities, but "not credible" when she described the intensity persistence and limiting effects of her back pain and her emotional condition. In the absence of such a bridge, the court must vacate and remand the Commissioner's decision to deny benefits to Ms. Brown.

Ms. Brown asks for a reversal and an order to award benefits. This record doesn't entitle her to such an order. This record contains plenty of evidence sufficient to support a grant of benefits, and plenty to support a denial of benefits. This court can't weigh the evidence, Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009), and there is no other way to resolve the doctors' disparate views. Today's ruling is based on the shortcomings of findings prepared by an overworked ALJ, not on the shortcomings of the evidence that might support a remand.

The court VACATES the Commissioner's denial of benefits and REMANDS the case to the Commissioner for further proceedings.

SO ORDERED.

ENTERED:  August 13, 2014


                                        /s/ Robert L. Miller, Jr.
                                        Robert L. Miller, Jr., Judge
                                        United States District Court